IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

MICHAEL PHILLIPS                                                           PLAINTIFF

v.                                    Civil No. 4:18-cv-04096

JAMES SINGLETON, Sheriff, Hempstead County;
JOHNNY GODBOLT, Captain, Hempstead County
Jail; and HEMPSTEAD COUNTY                                                 DEFENDANTS

## MEMORANDUM OPINION

Before the Court are cross-motions for summary judgment.[1] (ECF Nos. 28, 30). The parties have each filed responses in opposition. (ECF Nos. 34, 36). Defendants filed a reply. (ECF No. 40). The Court finds this matter fully briefed and ripe for consideration.

## BACKROUND

This is a civil rights action filed *pro* se by Plaintiff, Michael Phillips, pursuant to 42 U.S.C. § 1983. Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC"), Ouachita River Unit. The incidents giving rise to Plaintiff's claims occurred between February and April 2018 while he was incarcerated in the Hempstead County Detention Center ("HCDC"). (ECF No. 2).

Plaintiff was arrested and booked into the HCDC on February 17, 2018. (ECF No. 32-2, pp. 2-3). On March 8, 2018, Plaintiff filed a grievance stating that "something need to be done about the mold that's in the shower its makes me have chest pain and headaces." (ECF No. 32-3, p. 2). Defendant Godbolt responded, stating that Plaintiff needed to speak with Lt. Powell

---

[1] Plaintiff's Motion for Summary Judgment is docketed as ECF No. 28. Defendants' Motion for Summary Judgment is docketed as ECF No. 30.

regarding mold.[2]

Representatives from the Arkansas Criminal Detention Facilities Review Committee annually inspect the HCDC to ensure that the facility complies with state-mandated minimum standards. Black mold has not been found in the HCDC during any inspection by the Committee.[3] (ECF No. 32, p. 1). Plaintiff contends that the Arkansas Criminal Detention Facilities Review Committee does not find mold during inspections because "they don't walk inside the pods they just walk the halls without even seen how the inmates are doing." (ECF No. 35, p. 2).

On April 12, 2018, ATOKA, Inc., Professional Environmental Consulting Services, performed a visual assessment, sampling for airborne mold and checking for the presence of moisture at the HCDC. (ECF No. 32-4). Based upon ATOKA's visual surveillance, dry environmental conditions, and air sample results in the HCDC's structure, ATOKA, Inc.'s opined that there is no mold issue in the HCDC. *Id.* However, Plaintiff asserts that, "they never came to the back of the Jail where all the inmates is housed at they only did the mold assessment test in front of the jail where the sheriff office is located at." (ECF No. 35, p. 2-3).

On April 19, 2018, Plaintiff was released to the ADC. (ECF No. 32-2 p. 3). Plaintiff's medical records from the ADC show that he has a family history of heart disease and high blood pressure and that he has been treated for hypertension since 2011. (ECF No. 42-1, pp. 13, 25). The records also confirm that Plaintiff suffers from a skin condition on his scalp known as tinea (i.e. ringworm of the scalp) which developed sometime in 2017. *Id*. at pp. 38, 40. As of October 17, 2018, Plaintiff was still being treated with various medical creams and shampoo for the tinea, or as Plaintiff describes it, the "fungus and sores" on his head. (ECF No. 29, p. 9).

---

[2] Lt. Powell is not a named defendant in this lawsuit.
[3] It is not clear from the record when the most recent inspections took place.

Defendants provided the affidavit of Lieutenant James Wise, the acting jail administrator at the HCDC. who states that the 309 inmates[4] in the HCDC spray and clean the showers on Wednesdays and Saturday and that inmates are given mop buckets, mops, brooms, and cleaning solution that can be used every day. (ECF No. 32, p. 1). Plaintiff attempts to dispute this fact, stating:

> Defendants can't show any record of the 309 inmates cleaning the showers from March 8 2018 [u]ntil April 19 2018…for one the inmates cannot leave there pods it should have a record of when and what time the inmates use the cleaning supple because they have to keep a log on every inspection that they say that they do.

(ECF No. 35, pp. 1-2). Lieutenant Wise also states that he has not located any "black mold" or rust during his inspections of the HCDC.[5] In response Plaintiff states, "Why [black mold] wasn't discovered is because they paint over the mold and bleach the mold when they knew they got a inspection." (ECF No. 35, p. 2).

Plaintiff filed his Complaint on June 12, 2018. (ECF No. 2). Plaintiff alleges Defendants James Singleton, Johnny Godbolt,[6] and Hempstead County subjected him to unlawful conditions of confinement for two months while he was incarcerated in the HCDC. Specifically, Plaintiff claims:

> While being housed in F-Pod, plaintiff began to experience headaches, high blood pressure, coughing up blood and developed fungus and sores on the top of his head. On or about April 19, 2018, plaintiff was transported to the Arkansas Department of Correction and at that time was treated for the sores and fungus in the top of his head. Plaintiff was exposed to black mold while being housed in the Hempstead County Jail which was the contributing factor of the sores and fungus on the top of his head. Plaintiff is still being treated by a physician for his actual injury.

---

[4] Arkansas Act 309 is a state program that places inmates who meet certain criteria in local jails to be used as labor in order to reduce the number of inmates in state prisons.

[5] Lieutenant Wise, who is not a named defendant in this lawsuit, has not provided the specific dates when he inspected the HCDC.

[6] On February 8, 2019, Defendant Godbolt passed away due to natural causes. (ECF No. 26). Defendants have not asked that Mr. Godbolt be dismissed from this action because he passed away. However, the Court notes that Plaintiff has not requested permission to substitute Defendant Godbolt's estate as a Defendant.

3

*Id.* at p. 5. Plaintiff goes on to allege that, "Jail officials were aware of the black mold and the condition at the Hempstead County Detention Facility and did nothing more than paint over the problem, only for it to grow back through the paint." *Id.* Plaintiff sues Defendants in their individual and official capacities. He seeks compensatory and punitive damages. *Id.* at p. 5.

On April 11, 2019, Plaintiff filed a Motion for Summary Judgment, stating, "he still suffers from fungus and sores injuries and is under a doctor care . . . these factual disputes cannot be resolved without a trial." (ECF No. 28). Plaintiff also submitted a brief in support of his motion, including four affidavits.[7] In addition, for the first time, Plaintiff claims in his brief that "[he] ask to be move to another pod do to Plaintiff blood pressure been high every time Plaintiff get out of the shower do to the mold that's in the showers[.]" (ECF No. 29, pp. 3-4). Plaintiff alleges that Sergeant Mills refused to move him. *Id.* at pp. 3-4. These claims will not be considered by the Court because Sergeant Mills is not a defendant in this lawsuit and Plaintiff did not assert these claims in his Complaint.

On April 16, 2019, Defendants filed their Motion for Summary Judgment, arguing they are entitled to summary judgment because: (1) they did not subject Plaintiff to unconstitutional conditions of confinement; (2) they are entitled to the protections of qualified immunity; and (3) there is no basis for official capacity liability. (ECF No. 30). On April 23, 2019, Defendants filed a Response to Plaintiff's motion which incorporated their Motion for Summary Judgment, Brief in Support, and Statement of Facts. (ECF No. 34). On April 30, 2019, Plaintiff filed a Statement

---

[7] Three of the affidavits appear to be from inmates who were housed in the HCDC at some point. They each claim to have seen mold at the facility. The fourth affidavit is submitted by Plaintiff and lists the medications used to treat his skin condition at the ADC. (ECF No. 29, pp. 7-10).

4

of Disputed Facts in response to Defendants' Motion for Summary Judgment. (ECF No. 35). On May 3, 2019, Plaintiff filed his Response to Defendants' motion along with a Brief in Support. (ECF Nos. 36, 37). On May 16, 2019, Defendants filed a Reply in support of their Motion for Summary Judgment. (ECF No. 40).[8]

## LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "When, as here, cross-motions for summary judgment are filed, each motion should be reviewed in its own right, with each side 'entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record.'" *Visual Dynamics, LLC v. Chaos Software Ltd.*, 309 F. Supp. 3d 609, 616 (W.D. Ark. 2018) (citing *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983)). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (*citing Anderson v.*

---

[8] Defendants inadvertently failed to attach the referenced ADC medical records in their Reply. On June 24, 2019, Defendants filed Plaintiff's ADC medical records with the Court. (ECF No. 42). The records included an authorization to disclose his health information signed by Plaintiff. *Id.*

5

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**DISCUSSION**

**A. Conditions of Confinement**

Plaintiff claims he was exposed to black mold while he was incarcerated at the HCDC, causing him to "experience headaches, high blood pressure, cough[] up blood and develop[] fungus and sores on the top of his head." (ECF No. 2, p. 5). He claims that "[j]ail officials were aware of the black mold and . . . did nothing more than paint over the problem, only for it to grow back through the paint." *Id.* The Court construes this as a claim for unlawful conditions of confinement.

"[W]hen the State takes a person into its custody and holds him there against his will, the constitution imposes upon it a corresponding duty to assume some responsibility of his safety and general well-being." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Jail officials must provide reasonably adequate ventilation, sanitation, bedding, hygienic materials, food, and utilities. *Id.* Claims for unlawful conditions of confinement include threats to an inmate's health and safety. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (citation omitted).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (citing *Wilson v.*

*Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Id.* (internal citation and quotation omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Id.* However, courts are not concerned with *de minimis* levels of imposition on inmates. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). In the Eighth Circuit, the deliberate indifference standard is applied to all conditions of confinement claims regardless of whether the claims are brought by a pretrial detainee or a convicted prisoner. *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006).

### 1. Presence of Mold at the HCDC

Plaintiff alleges that there was mold in the showers at the HCDC between February and April 2018. Plaintiff has also submitted three affidavits from other inmates who state that they saw mold in the HCDC during this time. In response, Defendants state that the HCDC undergoes annual evaluations by the Arkansas Criminal Detention Facilities Review Committee and that the Committee has not found mold in the facility. Defendants also point to an inspection done on April 12, 2018, by ATOKA, Inc., Professional Environmental Consulting Services. During the inspection, ATOKA performed a visual assessment, sampled for airborne mold, and checked for the presence of moisture. However, ATOKA did not detect mold in the HCDC.

Upon consideration, the Court finds there is disputed question of fact as to whether there was mold in the HCDC between February and April 2018. However, "mere exposure to mold, mildew, and odors does not amount to 'an excessive risk to inmate health or safety' under the Eighth Amendment." *Jordan v. Franks*, 2010 WL 4007641, *2 (S.D. Ga. April 30, 2010) (citing

7

*Farmer v. Brennan*, 511 U.S. at 834); *see also Cable v. Wall*, 2010 WL 1486494, *4 (D.R.I. Mar. 18, 2010) (collecting cases showing that general lack of facility cleanliness, without more, cannot state an Eighth Amendment claim). Consequently, the disputed question of fact as to whether there was mold in the HCDC does not necessarily mean that Plaintiff is entitled to summary judgment or that his claim can survive Defendants' motion for summary judgment.

### 2. Deliberate Indifference

Although reasonably adequate sanitation is a basic identifiable human need, Plaintiff must still provide evidence that Defendants were deliberately indifferent to his health or safety. *See Revels*, 382 F.3d at 875. In the instant case, Plaintiff has not provided the Court with any evidence that Defendants Singleton, Godbolt, or Hempstead County were deliberately indifferent to his health or safety. To the contrary, at the HCDC, 309 inmates clean the showers twice a week and inmates are provided with cleaning supplies daily to clean the showers and cells. Plaintiff even states that the reason mold "wasn't discovered [during inspections] is because they paint over the mold and bleach the mold[.]" (ECF No. 35, p. 2). On its own merits, Plaintiff's statement shows that Defendants were not deliberately indifferent to the conditions he complains about. Moreover, Plaintiff's allegation that the mold returned after being painted and bleached does not provide any proof that the return of mold was due to deliberate indifference by Defendants. *See Amerson v. Outlaw*, 2013 WL 656478, *7 (E.D. Ark. Jan 29, 2013) (finding that when prison officials make efforts to remove mold but are unsuccessful, there is no deliberate indifference to a prisoner's health and safety). For these reasons, Plaintiff has failed to show any material issue of fact regarding deliberate indifference on the part of the Defendants.

Even if deliberate indifference could be established in this case, Plaintiff has still failed to submit evidence that his alleges injuries—headaches, high blood pressure, coughing up blood and

fungus and sores on his head—were caused by exposure to mold while he was incarcerated in the HCDC. Instead, Plaintiff's medical records from the ADC demonstrate that the fungus and sores on Plaintiff's head developed almost nine months before he was incarcerated in the HCDC. The medical records also demonstrate that Plaintiff has been treated for high blood pressure since 2011. As for Plaintiff's claims that he suffered headaches and coughed up blood, Plaintiff has not submitted any evidence that he sought treatment for these issues, while at HCDC, or after he was transferred to the ADC.[9] In addition, alleged injuries involving headaches, eye, and throat irritation have been found to be *de minimis* and, as a result, do not support a claim for conditions of confinement. *Gill v. Shoemate*, 2006 WL 1285412, *5 (W.D. La. May 8, 2006).

Because Plaintiff has not established that he was injured as a result of exposure to mold while incarcerated in the HCDC, Defendants are entitled to summary judgment on Plaintiff's individual capacity claims.[10] *See May v. United States of America*, 2:12-cv-0019 (E.D. Ark. 2012) (finding no constitutional claim where plaintiff was exposed to mold and mildew for eight months absent some showing that he suffered actual physical harm from the exposure); *Batiste v. Madison Parish Sheriff's Office*, 2007 WL 2263077, *2-3 (W.D. La. June 22, 2007) (same).

**B. Official Capacity Claims**

Plaintiff also sues Defendants in their official capacities. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity

---

[9] Upon his arrival at the ADC in April of 2018, Plaintiff's only health related complaints were a swollen right ankle that he injured while playing basketball at the HCDC and ringworm on his scalp. (ECF No. 42-1, p. 11).
[10] Because there was no violation of Plaintiff's constitutional rights, it is unnecessary for the Court to address the issue of qualified immunity.

claims against Defendants are treated as claims against Hempstead County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish any liability on the part of Hempstead County under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

In the case at bar, Plaintiff has not demonstrated that any policy, practice, or custom of Hempstead County was the moving force behind any injury he may have suffered. Accordingly, Defendants are entitled to summary judgment on Plaintiff's official capacity claims.

## CONCLUSION

For the above reasons, Plaintiff's Motion for Summary Judgment (ECF No. 28) should be and hereby is **DENIED**. Moreover, Defendants' Motion for Summary Judgment (ECF No. 30) should be and hereby is **GRANTED**. Accordingly, Plaintiff's claims against Defendants Singleton, Godbolt, and Hempstead County are **DISMISSED WITH PREJUDICE**. A judgment of even date shall issue.

**IT IS SO ORDERED**, this 30th day of July, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge